On or about April 15, 1946, Cloar Glass Company, plaintiff and appellant, contracted verbally with Louis Giacone and A. Bailot, defendants and appellees, to furnish and install certain mirrors in defendants' place of business, which was being remodeled, at 123 University Place, New Orleans. It was understood that the mirrors were to be furnished and installed as the work progressed. The glass company was represented by its field men, Snell and Sussdorf. Defendants acted through their general contractor, Eugene Cassanova, Jr. Plaintiff filed this suit alleging that the contract price was $3,009.04, and that the defendants had paid on account the sum of $2,875.22, leaving a balance due of $133.82, for which judgment is sought. Defendants allege that they have paid plaintiff in full.
Plaintiff's suit was dismissed in the lower court, and this appeal resulted.
The disputed item of $133.82 represents the charges for the fabrication and installation of certain temporary mirrors furnished by plaintiff. The facts are: About July 1, 1946, when defendants' contractor required delivery of certain of the mirrors, plaintiff informed him that there had been a strike in the glass industry which prevented a delivery of the polished plate glass mirrors contracted for. Plaintiff was then authorized by John R. Edwards, representing the firm of Shourds, Mogabgab Bean, architects for the job, to install temporary heavy sheet mirrors, the same to be replaced with the plate glass mirrors when and as they became available. The authorization was given because defendants were anxious to open and conduct their business. The temporary mirrors were installed about July 1, 1946, and later were replaced with the permanent mirrors, on or about October 1, 1946. Plaintiff billed defendants for the fabrication and installation of the temporary mirrors, without any charge being made for the glass used, as it was returned to plaintiff when the permanent mirrors were installed.
In endeavoring to support the demand, plaintiff's counsel argues that there was no time element mentioned in the contract, and that the strike in the glass industry, which prevented a flow of materials, was such an irresistible force as would excuse performance of the contract under articles 1933 and 3556 of the Civil Code. Counsel also contends that because of a custom prevailing in the contracting business the purchaser is to bear the cost of the temporary installation when the materials contracted for are not available through no fault of the other party.
[1] We perceive no merit in the first contention, as it seems to us a time element was involved in the contract, as will be hereafter pointed out. As to the other contention, that is that the defendants, under the obtaining custom, should bear the cost of the fabrication and installation of the temporary mirrors, we notice it is well answered by Edwards, who testified as a plaintiff witness. His testimony is to the effect that the custom relied upon does not prevail in a case such as the one we now consider. *Page 247 
Cassanova, the contractor, stated that he had asked Snell, who represented the plaintiff, to examine the plans and to give a price on the work, "provided that he had all the materials necessary to do the job." He stated that Snell replied that he would see if he had the necessary material and would then make a proposal. Snell later contacted Cassanova, gave him a price and stated that he had the material. The contract then followed. Regarding the availibility of the material, Cassanova testified:
"Q. Was the fact that Mr. Snell stated to you that the materials were on hand the moving factor that you gave them the contract? A. Yes, sir, definitely."
Neither Snell nor Sussdorf were produced as witnesses. It was explained that Snell was absent from the state at the time of the trial below and could not be located. Sussdorf's absence is unexplained.
Edwards admitted that the contract was let on the representation of plaintiff's agents that the materials for the job could be supplied. He said:
"* * * we approved that contract on the basis Mr. Snell and Mr. Sussdorf stated that they were in a position to supply all the materials for the job * * *."
And his further testimony is:
"Q. All of that material in the original contract was supposed to be in New Orleans and available? A. That was my understanding when the contract was let, yes, sir."
The representations referred to by Cassanova and Edwards are absolutely uncontradicted, and considering that it was represented to defendants' contractor that the materials were available when needed, and the contract was let on that promise, a time element was interwoven into the contract. Both of the contracting parties thoroughly understood that the materials would be delivered when required, as the job progressed.
[2] Edwards also testified at length regarding the custom of the contracting business upon which plaintiff relies, and also regarding the bill which is in dispute. His testimony is as follows:
"Q. Now, Mr. Edwards, as a matter of fact, was it not understood between yourself and the Cloar Glass Company, represented by Mr. Snell at that time, that the 1-2-3 Club would pay for the cost of the installation and fabrication of these heavy sheet mirrors? A. No, sir, there was no discussion about the price or anything at the time. The first we knew of it is when the bill came through.
"Q. But you were not surprised when the bill came thru, were you? A. I was surprised charging for material in addition to the contract.
"Q. Had the bill been for the cost of installation and fabrication it would not have been unusual, would it, Mr. Edwards? A. No, sir, I don't think it would have been unusual, but in this case it was because we assumed when Mr. Snell represented as having all the materials, we didn't expect any extra costs.
"Q. You did authorize Cloar Glass Company to put in the heavy sheet mirrors, did you not? A. Yes.
"Q. And it is the custom in the contracting field and architectural field, in a case such as this, if the material man is not able to furnish the material called for in the contract, that he pay for the cost of installation and fabrication? A. Yes, if you leave the words 'such as this case' out of it, it is alright.
"Q. Do you consider a strike in the glass business, the glass factories and the glass workers as good reason for not being able to supply the materials? A. Yes, I do."
 Cross-Examination
"Q. But you would not consider it a good reason if the contract was let with the assurance that all material was on hand and available, would you? A. No, sir, I would not.
"Q. And that was the situation here? A. Yes, sir, it was to my reasoning.
"Q. All of that material in the original contract was supposed to be in New Orleans and available? A. That was my understanding when the contract was let, yes sir."
It seems to us that when Cassanova made the contract with plaintiff, premised *Page 248 
upon the representations of plaintiff's agents that the materials were on hand and available, he was justified in assuming that the materials would be furnished whenever he needed them for the job, and that it was not contemplated that plaintiff should order them from the factory.
Under the circumstances, our opinion is that defendants are not liable for plaintiff's bill, and that the furnishing and installation of the temporary mirrors was made necessary solely through the plaintiff's inability to furnish the permanent heavy plate glass mirrors which its agents represented were on hand and available, and which could be furnished as needed.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.